UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-10110-CIV-GOODMAN
[CONSENT CASE]

ELIZABETH MARQUARDT,

      Plaintiff,

v.

OCEAN REEF COMMUNITY ASSOCIATION, et al.,

      Defendants.

_____/

**ORDER ON PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY
IN ORDER TO TAKE DEPOSITION OF A NON-PARTY WITNESS**

"A goal is a dream with a deadline."

-   Napoleon Hill (1883 - 1970) (American self-help author who wrote <u>Think and Grow Rich</u>)

"If we didn't have deadlines, we'd stagnate."

-   Walt Disney (1901 - 1966)

"Wisdom consists of the anticipation of consequences."

-   Norman Cousins (1915 - 1990) (American political journalist, author, and professor who was Editor-in-Chief of <u>Saturday Review</u>)

More than a year after the discovery deadline expired, Plaintiff Elizabeth

Marquardt filed a motion [ECF No. 159] for leave to take the deposition of LeeAnne Yule,

a non-party witness who she has known about since before this employment discrimination lawsuit against her former employers was even filed in May 2019. In her motion, Marquardt emphasizes her intent to limit the deposition to only one hour. But Defendants Ocean Reef Community Association ("ORCA") and David Ritz contend, in their Opposition Response [ECF No. 162], that there are several reasons why the Undersigned should not modify the Scheduling Order (and should therefore deny the motion).

The Court previously denied an earlier request from Plaintiff to extend the discovery period. In addition, Marquardt could have taken Yule's deposition and preserved her testimony for trial use. She chose not to do that. In fact, she did not even *list* Yule as a potential witness until two weeks before the discovery period closed.

Marquardt argues that she should be permitted to take Yule's deposition at this late date because Yule has moved from Florida and is beyond the Court's trial subpoena power. But Marquardt waited until six months after Yule moved out of Florida (and one year after discovery closed) to seek to preserve Yule's testimony through a post-deadline deposition and a request to reopen discovery.

For these reasons and others, all of which are outlined below, the Court concludes that Marquardt has not established good cause and excusable neglect to modify the trial scheduling order and **denies** Marquardt's motion.

## I.   <u>Factual and Procedural Background</u>

### a.  <u>Yule</u>

While represented by the attorney who represents Plaintiff in the instant case, Yule initiated her own claims against ORCA in November 2018 by filing an EEOC Charge alleging sexual harassment, constructive discharge, and retaliation. In her Charge, Yule alleged that she was sexually harassed by David Ritz, with whom she had a consensual sexual relationship before Yule's employment with ORCA.

In February 2019, Yule filed suit in the 16th Judicial Circuit in and for Monroe County (*Jane Doe v. Ocean Reef Community Association, ORCAT, Inc. and David Ritz*, Case No. 2019-000077 (the "State Court Action")). Yule later voluntarily dismissed her State Court Action, choosing instead to pursue her claims in federal court. *See Yule v. ORCA, et al.*, Case No. 4:19-cv-10138-MORENO (S.D. Fla.). On December 4, 2020, the federal court entered a Final Order of Dismissal and Order Denying All Pending Motions as Moot. *Id.* at ECF No. 146. The parties in *Yule* filed a Joint Stipulation of Dismissal with Prejudice on January 29, 2021. *Id.* at ECF No. 147.

While both Plaintiff and Yule alleged claims for sexual harassment and retaliation, their claims are otherwise independent. Neither Plaintiff nor Yule sought to consolidate the cases or otherwise filed notices with either Court indicating that the two were related actions. Marquardt testified that she never saw Yule subjected to any form

of sexual harassment. In fact, Plaintiff did not learn of the existence of Yule's claims until after Plaintiff's resignation, when Yule contacted Plaintiff for a referral to counsel. Likewise, Yule testified that she never spoke to Marquardt until after Marquardt resigned and that Plaintiff never witnessed the alleged harassment which Yule claims she suffered.

      b. <u>Marquardt</u>

Plaintiff commenced this action on May 2, 2019 (after Yule had filed her State Court Action), alleging a number of claims against Defendants. She alleged claims for hostile work environment/sexual harassment, constructive discharge, retaliation, gender-based discrimination, and unequal pay. On April 9, 2020, the Court granted Defendants' Summary Judgment Motion as to the hostile work environment/sexual harassment and constructive discharge claims. [ECF No. 121]. The claims that remain to be tried involve whether ORCA's decision not to award Plaintiff a $10,000 bonus was either: (i) in retaliation for her prior complaints of discrimination, (ii) motivated by a desire to discriminate on the basis of her gender, or (iii) a violation of the Equal Pay Act.

On June 12, 2019, the Court entered its Trial Scheduling Order. [ECF No. 24]. In this Order, the Court established that all discovery, including expert discovery, should be completed by December 30, 2019. *Id.* at p. 2. The Order went on to state that this discovery cutoff could be extended by agreement "so long as such extension does not

impact any of the other deadlines contained in this Scheduling Order." *Id.* at p. 2, n. 1. Upon issuance of the Trial Scheduling Order, the parties proceeded forward with discovery.

On July 1, 2019, Plaintiff served her Rule 26 Initial Disclosures, identifying those individuals whom Plaintiff believed had information to support her claims. The rule requires disclosure of individuals likely to have information "that the disclosing party *may* use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26 (emphasis added).

Marquardt knew about Yule and her anticipated testimony (as discussed above), but she did not identify Yule as a potential witness at that time. The parties then proceeded forward with written discovery. Plaintiff never identified Yule as a potential witness in her written discovery responses. During Plaintiff's deposition, she testified that she never spoke with Yule during Plaintiff's employment at ORCA and did not learn of Yule's allegations against Mr. Ritz until after Plaintiff's resignation. Plaintiff further testified that she never saw Mr. Ritz engage in any of the purported harassment alleged by Yule in her own complaint.

Plaintiff had no knowledge of Yule's allegations during her own employment, but she amended her initial disclosures on December 12, 2019 (approximately two weeks before the original discovery cutoff) to add Yule as a potential witness. Eight days later,

on December 20, 2019, Plaintiff's counsel conferred with Defendants' respective counsel regarding the extension of the discovery cutoff. Securing Yule's deposition was not among the reasons advanced by Plaintiff for extending the discovery cutoff. Defendants agreed to extend the discovery cutoff from December 30, 3019 to January 8, 2020 to accommodate the scheduling of various last-minute depositions. However, Defendants objected to any further extension of the discovery cutoff or the modification of the other pretrial deadlines.

     c.  <u>The Court's Denial of Plaintiff's First Motion to Extend the Discovery Cutoff</u>

On January 7, 2020, Plaintiff filed a Motion to Extend Discovery Cutoff ("First Motion"). [ECF No. 61]. In the First Motion, Plaintiff moved to extend the discovery cutoff from January 8, 2020 to January 20, 2020. Plaintiff claimed the additional time was needed to: (i) secure responses to written discovery requests from Ritz, (ii) secure responses to various subpoenas issued to third parties, and (iii) address the potential need to depose additional witnesses who may be revealed during the last round of depositions. But preserving Yule's testimony was not included as a reason for seeking an extension of the discovery cutoff.

On January 8, 2020, the Court denied the request, finding that Plaintiff had failed to satisfy the rigorous good-cause showing required by Federal Rule of Civil Procedure

16(b)(4) for modification of a scheduling order (the "Order"). [ECF No. 62]. In so ruling,

the Court noted:

> Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the parties seeking the extension. *See, e.g., Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) ("We have recognized that Rule 16[b]'s good cause standard 'precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension.'" (first alteration added; citation omitted)); *Roberson v. BancorpSouth Bank, Inc.*, Civ. Act. No. 12-0669-WS-N, 2013 4870839, at *2 (S.D. Ala. Sept. 12, 2013) ("Diligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry.").

> Plaintiff has not shown she has been diligent in trying to comply with the deadlines to complete discovery or schedule depositions. . . . Because Plaintiff has not demonstrated diligence, her request for a modification of the Scheduling Order's deadlines fails to satisfy the rigorous good-cause showing necessary under Rule 16(b)(4).

*Id.* at p. 2.

### d. Yule's Move to Arizona and the Court's Subsequent Trial Orders

In July 2020, Yule moved to Arizona. Yule gave deposition testimony in her *own*

case via Zoom after she relocated to Arizona. Plaintiff did not seek to reopen the

discovery period immediately upon learning of Ms. Yule's relocation or upon the

issuance of the subsequent trial orders.

On September 14, 2020, the Court entered another Trial Scheduling Order. [ECF

No. 152]. The Second Trial Scheduling Order did not modify the prior Trial Scheduling

Order with respect to the discovery cutoff. Rather, it set a new trial date in May 2021 and modified other pretrial deadlines specifically related to the new trial date. Yule was already residing in Arizona when the Court entered the Second Trial Scheduling Order. Plaintiff did not raise any need to reopen discovery at this time. She chose instead to wait six months after learning of Ms. Yule's move, and four months after entry of the Second Trial Scheduling Order, before raising the issue.

On December 23, 2020, Plaintiff filed an Unopposed Motion for Leave to Modify Requirements in the Court's Scheduling Order. [ECF No. 153]. Here, Plaintiff sought an order relieving the parties from any further requirements to mediate the case and confirming that the deadline for filing all dispositive motions had passed. Plaintiff made no mention in this motion of the need to reopen discovery even though Plaintiff was fully aware of Yule's relocation to Arizona in July 2020. On January 6, 2021, the Court granted Plaintiff's requested relief. [ECF No. 154].

In late January 2021, Plaintiff first conferred with Defendants about her desire to reopen discovery to preserve Yule's testimony (because she was no longer within the subpoena power of the Court).

## II.     The Parties' Contentions

### a.   Plaintiff's Contentions

Plaintiff takes issue with Defendants' refusal to stipulate that Plaintiff may use Yule's deposition from her separate lawsuit in the instant lawsuit. Plaintiff argues that the testimony offered by Yule will not differ in any material respect from her earlier testimony and that her testimony can be used to impeach her if it does. Noting that the same lawyers who represented ORCA and Ritz in Yule's lawsuit represent them here, Plaintiff says "it would be difficult under these circumstances for Defendants to frame some alleged prejudice to them should the deposition proceed." [ECF No. 159, p. 2].

Plaintiff also notes that United States District Judge Cecilia Altonaga, who presided over this case until the parties provided full consent and the case was referred to the Undersigned for all purposes, ruled that Yule would be permitted to provide trial testimony about Ritz's sexual misconduct toward her. Judge Altonaga ruled that "an employee may introduce evidence of harassment of which she is not personally aware to prove her employer is responsible for the harassment or to rebut an affirmative defense." [ECF No. 121, pp. 23-24]. Judge Altonaga also noted that "a jury could conclude that ORCA's and Ritz's proffered business justifications are thin cover for Ritz's retaliation against Plaintiff and sexualized views of women in the workplace." *Id.*

9

What Judge Altonaga did *not* say, however, was that Marquardt would be able to present Yule's testimony at trial through a deposition taken after expiration of the discovery deadline. Judge Altonaga's ruling on relevance and admissibility did not authorize Plaintiff to present the testimony in this case through a post-deadline deposition in this lawsuit or a deposition from Yule's own case. The ruling was substantive and concerned relevance and admissibility. It did not discuss how or if Plaintiff would be able to present Yule's testimony at trial.

Plaintiff notes that district courts have broad discretion over discovery and trial scheduling. She contends that Yule's deposition was "not believed to be necessary" last year because she was a Florida resident then. [ECF No. 159, p. 5].

According to Plaintiff, any alleged prejudice to Defendants is "manufactured" and purportedly does not pass "the straight face test." [ECF No. 165, p. 2]. She emphasizes that (1) Yule's testimony, in summary form, was given in her sworn declaration filed in opposition to Defendants' summary judgment motion; (2) Defendants' personnel interviewed Yule shortly after ORCA launched its investigation of Plaintiff's allegations; (3) Yule's handwritten notes of her allegations about Ritz's sexual abuse and molestation were provided to Defendant ORCA during its 10-day investigation of gender discrimination in early 2018; (4) the same defense counsel took Yule's deposition over three days in Yule's own lawsuit; (5) there is no prejudice in permitting the after-the-

deadline deposition of a witness whose identity and testimony are already known to the parties and their counsel; (6) Defendants' position is "largely oblivious to the intervening global pandemic which transformed court deadlines and witness availability"; (7) Defendants should have provided a concession and given a "routine stipulation" to a discovery cutoff enlargement; and (8) Plaintiff demonstrated "excusable neglect" for failing to secure Yule's deposition (and for failing to preserve her testimony for trial). *Id.* at pp. 1, 7.

b. <u>Defendants' Contentions</u>

Defendants emphasize that Plaintiff's motion is not merely one to take a brief deposition; it is actually a request to modify a trial scheduling order after the Court concluded that she did not present good cause, and therefore previously rejected her earlier request to extend the discovery period. Defendants also suggest that the equities are with them, not with Plaintiff.

For example, they highlight the fact that Plaintiff did not include Yule as a potential fact witness in her Rule 26 disclosures until approximately two weeks before the close of the discovery period. They say they could have "cr[ied] foul" about Plaintiff's decision to wait until "the eve of the discovery cutoff to identify Yule as a potential witness." [ECF No. 162, p. 2].

By explaining that they could have "cried foul" about Plaintiff's failure to timely list Yule in her Rule 26 disclosures (and about her up-to-the-deadline supplemental disclosures), Defendants seem to suggest that Plaintiff was engaged in sandbagging and purposefully hid her intent to rely on Yule as a trial witness until it was too late for Defendants to arrange to take her deposition in this case.

The Undersigned takes no position on whether Plaintiff's tardy Rule 26 disclosures were simply an inadvertent oversight, or an intentional, cagey tactic designed to hinder or prevent Defendants from taking Yule's deposition. Likewise, the Undersigned is not expressing an opinion on whether Plaintiff's failure to timely take Yule's deposition was part of a plan to hide an intent to use her as a trial witness until shortly before the discovery deadline expired (and lull Defendants into a false sense of security), or the practical result of a more-routine decision to not take the deposition of a friendly witness.

Regardless of Plaintiff's actual purpose, Defendants describe Plaintiff's dilemma -- being confronted with a witness who is now, as an Arizona resident, beyond the Court's subpoena power for a Florida trial -- as one she created through a tactical decision to not take Yule's deposition. Defendants underscore the reality that the potential for witnesses to unexpectedly move away before trial "exists in every case" and does not generate the good cause required to modify a trial scheduling order under Rule 16(b)(4).

Further undermining any good cause argument to support a post-deadline deposition of Yule, Defendants note that Plaintiff was not diligent, as she waited six months after Yule moved to seek to reopen discovery to take her deposition. Moreover, they note that Yule gave three days of deposition testimony in her own case through Zoom after she moved to Arizona.

At bottom, Defendants contend that Plaintiff was not diligent and that the inquiry into good cause ends there, without any further analysis. Thus, they say that lack of prejudice is insufficient to modify the trial scheduling order if the proposed amendment to that order could have been timely made. Alternatively, Defendants argue that consideration of the prejudice-to-Plaintiff factor is still insufficient to justify the discretionary relief requested here.

### III.   <u>Applicable Legal Principles and Analysis</u>

"A party seeking the extension of an already-expired scheduling order deadline must show both good cause **and** excusable neglect." *Payne v. C.R. Bard, Inc.,* 606 Fed. App'x 940, 943-44 (11th Cir. 2015) (emphasis in original) (citing Fed. R. Civ. P. 6(b)(1) and 16(b)(4)). Rule 16's "good cause" standard "precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec,* 527 F.3d at 1232 (quoting *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998)); *see also Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002) ("The

primary measure of Rule 16's 'good' cause standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

When determining whether excusable neglect exists, courts should consider "all pertinent circumstances, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Harris Corp. v. Ruckus Wireless, Inc.*, No. 6:11-CV-618-ORL-41, 2015 WL 3883948, at *6 (M.D. Fla. June 24, 2015); *Payne*, 606 Fed. App'x at 943-44.

Courts recognize that *both* good cause and excusable neglect must be present when a party seeks to extend an already-expired scheduling order. *See Payne*, 606 Fed. App'x at 943-44; *see also Leibel v. NCL (Bahamas) LTD.*, 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016) (denying Plaintiff's motion to substitute expert witness and using Rule 16 analysis). Such a rigorous standard is necessary, as court deadlines are neither "aspirational nor advisory." *Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669, 2013 WL 4870839, at *1 (S.D. Ala. Sept. 12, 2013).

As Judge Altonaga noted in the Order Denying Plaintiff's First Motion to Extend the Discovery Period, "diligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry." [ECF No. 62, p. 2]. This good cause standard precludes modification "unless the schedule cannot be met despite the diligence of the party seeking the extension." *See Sosa*, 133 F.3d at 1418 (internal quotation marks omitted); *see also Oravec*, 527 F.3d at 1232 (quoting *Sosa*, 133 F.3d at 1418) (same); *Ameritox, Ltd. v. Aegis Servs. Corp.*, No. 07-80498, 2008 WL 2705435, at *2 (S.D. Fla. July 9, 2008) ("[T]he likelihood of obtaining permission to amend diminishes drastically after the deadline for amendments contained in the scheduling order expires.").

Plaintiff had the opportunity to preserve Yule's testimony for use at trial during the discovery period. She simply chose not to. Given that this opportunity did exist, Plaintiff cannot establish that preserving Yule's testimony during the original discovery period was impossible "despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418. Indeed, Plaintiff had taken twelve depositions before Yule moved to Arizona. So she surely could have taken one additional deposition.

Yule moved to Arizona in July 2020. But Plaintiff waited six months after she moved to first raise the issue of reopening discovery to preserve Yule's testimony. Moreover, she has not provided any explanation for this six-month delay. Had Plaintiff raised this issue in July 2020, it is possible it could have been addressed before Yule's

deposition was taken in her own case (on September 9, October 7, and November 3, 2020). [Plaintiff's counsel represented Yule in her own case and participated in the three depositions which Defendants (through the same defense counsel) took there.].

When it is clear a party failed to act diligently, the inquiry into good cause ends there. *See Oravec*, 527 F. 3d at 1232. Plaintiff has not established good cause. She has not adequately explained why she never listed Yule in her initial Rule 26 disclosures, why she waited until the discovery period had almost ended to make an amended disclosure which finally included Yule as a witness, or why she waited to seek an enlargement of the trial scheduling order so long after learning that Yule had moved out of state.

Thus, if the Undersigned were to use the "prejudice-is-irrelevant-to-good-cause" analysis, then Marquardt's primary argument would be, and should be, ignored. *See, e.g., Roberson*, 2013 WL 4870839, at *2 ("Nor does plaintiff establish the requisite good cause via her position that there would be no prejudice to defendant if the amendment were allowed.").

But the result would be the same even if the prejudice argument were to be considered.

Although some courts have considered the issue of undue prejudice on the non-moving party, that consideration is factored in to determine whether excusable neglect exists. *See Harris Corp. v. Ruckus Wireless, Inc.*, No. 6:11-cv-618, 2015 WL 3883948, at *6

16

(M.D. Fla. June 24, 2015). In these cases, the courts do not look *solely* at the issue of undue prejudice, but they also consider factors such as "whether [the delay] was **within the reasonable control of the movant** and whether the movant acted in good faith." *Id.* (emphasis added).

As outlined above, Plaintiff cannot establish that the delay in seeking to preserve Yule's deposition was outside of her control or that she was otherwise always acting in good faith.

To be sure, Yule's decision to move to Arizona was likely entirely outside of Plaintiff's control, but *that* is not the issue which the control question addresses. Instead, the critical question is whether Plaintiff had control over the ability to timely obtain Yule's deposition testimony, and that answer is "yes." Plaintiff could have obtained the deposition testimony before Yule moved. And she could have sought to reopen discovery after Yule moved long before her recent motion to adjust the trial scheduling order. *See generally Ameritox*, 2008 WL 2705435, at *2 ("[E]ven if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made.").

Plaintiff contends that she did not bother to take Yule's deposition because Yule was deemed to be a "friendly" witness. The mere fact that Yule chose to move to Arizona does not seem like the type of factor which would somehow automatically change her

status to an *unfriendly* witness. Thus, although Plaintiff will not be able to take Yule's deposition for trial preservation purposes, this Order does not prevent Plaintiff from persuading Yule to voluntarily appear in person for trial. The trial is currently scheduled for trial in Key West in November. There are far-worse places to be than Key West in November, so maybe Plaintiff and/or her attorney can arrange for Yule to appear as a live witness at trial.

If it turns out that Yule is unwilling to appear voluntarily as a trial witness even if her travel expenses were paid for or reimbursed, then Plaintiff will be confronted with a trial reality: "Parties who make the tactical decision not to preserve deposition testimony during the discovery phase take the risk that the testimony will not be presented if the witness is unable or unwilling to appear at trial." *Kallas v. Carnival Corp.*, No. 06-20115, 2009 WL 10668180, at *4 (S.D. Fla. June 12, 2009) (citing *Energex Enters., Inc. v. Shughart*, No. CIV-04-1367, 2006 WL 2401245, at *7 (D. Ariz. 2006)); *see also Smith v. Royal Caribbean Cruises, Ltd.*, 302 F.R.D. 668, 692 (S.D. Fla. 2014) (granting defense motion for a protective order to preclude untimely depositions for trial preservation purposes and holding that "permitting parties as a matter of course to take depositions after the close of discovery would undermine the Court's ability to manage its docket"); *Radke v. NCL (Bahamas) Ltd.*, No. 19-cv-23915, 2021 WL 827008, at *2-3 (S.D. Fla. Mar. 4, 2021) (denying motion for leave to take deposition outside of discovery period for preservation purposes). *Cf. Chrysler*

*Intern. Corp. v. Chemaly*, 280 F.3d 1358, 1361 (11th Cir. 2002) (holding trial court did not abuse its discretion in granting defense motion for a protective order to prevent deposition scheduled outside the discovery deadline).

If Plaintiff did not demonstrate due diligence in January 2020 when she unsuccessfully moved to extend the discovery deadline, then she surely did not do so now when requesting similar relief a year later, when she is confronted with the practical result of her hazardous decision to not take Yule's deposition.

The Undersigned has one final observation, and it concerns the COVID-19 pandemic. Plaintiff's initial motion does not even once mention the pandemic as a ground to support her request to take Yule's deposition long after the discovery deadline expired. Her reply mentions it only briefly. Specifically, she says "the current global pandemic was surely not a foreseeable event which diligent counsel could either envision or plan for." [ECF No. 165, p. 6]. While true, this comment has no relation to the current motion.

First, the discovery cutoff was December 30, 2019, a few months *before* the pandemic became an issue in the United States. As of December 30, 2019, parties were not scheduling, postponing, canceling, or accelerating deposition dates because of the pandemic. Second, the parties agreed to a discovery extension through January 8, 2020, before the pandemic became an issue affecting litigation in this country. Plaintiff could have taken Yule's deposition by the pre-pandemic date of January 8, 2020, but she did

not. Third, Plaintiff, represented by her current counsel, gave deposition testimony in September, October, and November 2020 -- all long after the pandemic was in full swing. Fourth, Plaintiff has not advanced the argument that the pandemic is the reason why she decided to not take (or seek to take) Yule's deposition before the December 30, 2019 discovery cutoff or the January 8, 2020 extended discovery deadline. Fifth, Plaintiff has not claimed that it was the pandemic which somehow prevented her from timely seeking leave to take Yule's deposition after she moved to Arizona. Finally, Marquardt has not compared the pandemic's lack of impact on Yule's own case (where she gave three days of testimony in a Zoom deposition from Arizona) to the instant case.

To be sure, the pandemic has affected trial dates but, other than a relatively brief period at the beginning of the pandemic, depositions (taken for discovery purposes, for trial-preservation purposes, or both) have gone forward during the COVID-19 pandemic. A later, pandemic-caused need to reschedule a trial to a later date does not excuse an earlier, pre-pandemic failure to take a deposition of a witness.

## IV.   <u>Conclusion</u>

Plaintiff has not established the good cause and excusable neglect she needs in order to modify the trial scheduling deadline. Plaintiff's strategic decision to wait until

the last minute to identify Yule as a trial witness in her mandatory Rule 26 disclosures and her related tactic of not taking Yule's deposition when she was able were risky. Far from being a scenario where the *defense* position does not pass the "straight face" test, it is Plaintiff's motion which is difficult to accept. At bottom, it does not meet the rigorous requirements of a Rule 16 motion; the Undersigned denies the motion.[1] *See also In Re: Abilify (Aripiprazole) Products Lia. Lit.*, Nos. 3:16-md-2734 and 3:17-cv-634, 2021 WL 763847, at *1 (N.D. Fla. Jan. 5, 2021) (denying Plaintiff's motion to take deposition of expert witness after the discovery deadline and classifying argument that the media mentioned the expert's potential role in the new administration of President-Elect Joe

---

[1]     An appellate court reviews a district court's ruling on a motion to extend a deadline for an abuse of discretion. *See Payne*, 606 Fed. App'x at 944.

        To be sure, another judge presiding over this case for trial purposes could reach a different conclusion about Plaintiff's request to modify the trial scheduling order to permit a preservation-type post-deadline deposition under the unique circumstances of this case. But the mere fact that a reviewing court may decide the issue "differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-cv-81397, 2015 WL 11921411, at *1 (S.D. Fla. July 6, 2015) (denying objections to magistrate judge's discovery order) (internal quotation omitted). *See generally Am. Family Mut. Ins. Co. v. Roth*, No. 05C 3839, 2010 WL 3397362, at *2 (N.D. Ill. Aug. 25, 2010) (internal citations omitted) (emphasis added) ("[I]ndeed, on virtually identical facts, two decision makers can arrive at **opposite conclusions**, both of which constitute **appropriate exercises** of discretion.").

Biden as speculative and inadequate because Plaintiffs "were aware of the circumstances giving rise to the instant motion" but "failed to promptly act").

**DONE and ORDERED** in Chambers, in Miami, Florida, on April 8, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**
All Counsel of Record